IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA RENEE KESTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-00283-PRW |
| | ) |
| JANSSEN PHARMACEUTICALS, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This is the third lawsuit that Plaintiff, Angela Renee Kester, has filed against Defendant Janssen Pharmaceuticals, Inc. relating to Levaquin, an antibiotic in the fluoroquinolones family of drugs, which she was prescribed in 2009. Plaintiff alleges she was prescribed a 10-day dose of Levaquin, which she took for eight days, but then discontinued after she began experiencing severe side effects.

Plaintiff brought her first lawsuit against Janssen on August 14, 2015 in Stephens County, District Court ("2015 case"), which was transferred to the Fluoroquinolone Products Liability Litigation in the United States District Court for the District of Minnesota (the "MDL"). However, on June 12, 2018, Plaintiff and Defendant filed a stipulation of voluntary dismissal without prejudice.

Plaintiff filed a second related case against Defendant on February 5, 2018 in the United States District Court for the Eastern District of Oklahoma ("2018 case"). On August

6, 2018, the 2018 case was also transferred to the MDL, and on April 8, 2019, Plaintiff again filed notice of voluntary dismissal.

This case was filed on August 17, 2020. And as with each previous case, Plaintiff claims Defendant failed to warn her of the side effects of Levaquin, specifically that its use can cause peripheral neuropathy—a condition that develops as a result of damage to the peripheral nerves. Plaintiff has sought medical treatment related to this condition since 2009 and seeks $900 million dollars in alleged damages as result.

Defendant filed a motion to dismiss (Dkt. 10) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's claims must be dismissed for three independent reasons. First, Defendant argues that Plaintiff's claims are time-barred and not revived under Oklahoma's savings statute. Second, that her claims are purportedly barred by the "two dismissal" rule.[1] And third, that Plaintiff has failed to state a claim for failure to warn because she admits the complained of condition was in the product warnings at the time she took the medication. Plaintiff responded in opposition (Dkt. 11), and Defendant has replied (Dkt. 12).

For the reasons that follow, the Court finds that Plaintiff's claims are time-barred,[2] and therefore Defendant's motion to dismiss (Dkt. 10) is **GRANTED**.

---

[1] Fed. R. Civ. P. 41(a)(1)(B).

[2] It unnecessary to address Defendant's other arguments for dismissal given the Court's disposition of the limitations issue.

*Legal Standard*

In reviewing a Rule 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[3] While a complaint need not recite "detailed factual allegations," "a formulaic recitation of the elements of a cause of action will not do."[4] The pleaded facts must establish that the claim is plausible.[5] And while pro se pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers,[6] the Court will not assume the role of advocate for the pro se litigant. Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.[7]

Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished"—which is the case here.[8] Where the factual

---

[3] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996)).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).

[5] *Id*.

[6] *Haines v. Kerner*, 404 U.S. 519, 520−21 (1972).

[7] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

[8] *Billinger v. Weinhold*, 531 F. App'x 928, 929 (10th Cir. 2013) (citations omitted); *see also Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.").

allegations establish that the requested relief is barred by the applicable statute of limitations, the claim should be dismissed.[9]

### *Discussion*

Defendant contends that the applicable statute of limitations here is two years, which Defendant claims began running in July 2009, once Ms. Kester started experiencing severe muscle weakness causing her to stop taking Levaquin. But because this action was filed more than a decade later, on August 17, 2020, Defendant maintains Plaintiff's claims are untimely.

Plaintiff, in response, does not challenge Defendant's assertion that the applicable limitations period for their claims is two years, but instead relies on later dates for the alleged accrual of her claims. Specifically, she appears to argue that her claims are timely under the discovery rule because she wasn't formally diagnosed with peripheral neuropathy until 2019. Plaintiff, however, pleads no facts suggesting that she could not have learned of the link between fluoroquinolones and her injuries by exercising ordinary diligence before that point.

After carefully reviewing the parties' submissions, the Court agrees with Defendant that Plaintiff's claims, as currently pleaded, are untimely. When sitting in diversity, the Court applies the substantive law of the forum state—here, Oklahoma.[10] Based on the

---

[9] *See e.g.*, *Ballen v. Prudential Bache Securities., Inc.*, 23 F.3d 335, 336–37 (10th Cir. 1994).

[10] *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). This includes Oklahoma's choice-of-law provisions. Here, Oklahoma's choice-of

allegations in the Complaint, there appears to be two categories of conceivable claims alleged here: negligence and products liability.[11] Each category of claims is based on Oklahoma's substantive law and, therefore, subject to Oklahoma's statutes of limitations. Title 12, § 95 of the Oklahoma Statutes establishes that "civil actions for torts may only be brought within two years after the cause of action accrues."[12] This two-year statute of limitations applies to each category, meaning Ms. Kester had two years from the date of her injury—upon the onset of severe side effects in 2009—to bring her claims.

Normally, for purposes of statutes of limitations, "a cause of action accrues when the injury occurs."[13] But Oklahoma also observes the "discovery rule," so that injured parties who are initially unaware that an injury has been sustained have the same rights to

---

law provisions indicate that Oklahoma substantive law applies to all of Ms. Kester's claims. *See Childs v. Oklahoma ex rel. Oklahoma State Univ.*, 848 P2d. 571, 578 n.41 (Okla. 1993).

[11] Plaintiff identifies her legal theories as "negligence, criminal intent, infliction of emotional distress, financial loss, lost income, ongoing medical care, expensive bills, carelessness, product liability, fraud, deceptive trade practices, strict liability, and invasion of privacy." Pl.'s Resp. in Opp'n to Def.'s Mot. To Dismiss & Br. in Supp. (Dkt. 11) at 2−3; *see also* Compl. (Dkt. 2) at 3−4.  Some of these are not legally cognizable claims for relief, and those that are proper causes of action are conclusory, unexplained, and unsupported by any facts, aside from, at most, her claims based on theories of negligence and products liability.

[12] *See Moss v. Polyco, Inc.*, 522 P.2d 622, 624 (Okla. 1974) (an action against a manufacturer for products liability is governed by the two-year statute of limitations for actions for injuries to rights of another, not arising under contract); *see also Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.*, 899 P.2d 621, 624 (Okla. 1995) (the two-year statute of limitations begins to run when the negligent act has occurred and the plaintiff has suffered damages).

[13] *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016).

sue as parties whose injury is immediately ascertainable.[14] The discovery rule provides that this two-year clock can be "tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury."[15] While the burden of proof that the statute of limitations bars an action falls on the defendant, when that burden is carried, the plaintiff then bears the burden of proving that the discovery rule tolls accrual long enough to make the action within time.

And based on this record, Defendant correctly points out that "[e]ven if Plaintiff was not diagnosed with peripheral neuropathy in 2009 she certainly had sufficient information"[16] somewhat soon thereafter.[17] Indeed, the record demonstrates that Plaintiff's prescription warned about peripheral neuropathy in July 2009, and she admits she suffered severe side effects from it at that time and has been in doctor's care ever since. Moreover, the possibility that Levaquin could cause these types of alleged injuries appears to have been "common knowledge" by 2013, when the Federal Drug Administration (FDA) issued a public report stating that fluoroquinolones could lead to severe problems like peripheral neuropathy which can cause pain, numbness, and weakness throughout the body.

---

[14] *See id.*

[15] *Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1189 (Okla. 2011) (citing *Resolution Trust Corp. v. Grant*, 901 P.2d 807 (Okla. 1995)).

[16] Def.'s Reply (Dkt. 12) at 2 (citations omitted).

[17] Additionally, the fact that her alleged condition seemingly became worse over time does not change the result in the circumstances existing here. *See Gustavson v. United States*, 655 F.2d 1034, 1036 (10th Cir. 1981) ("Lack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute.").

Furthermore, the FDA announced that problems caused by the chemical could be permanent. Thousands of individuals across the country have since brought product liability suits against the manufacturers of the drugs.[18]

Under these circumstances, the connection between Defendant's drug and Plaintiff's alleged injuries was discoverable through ordinary diligence by 2013 at the latest. And because Plaintiff pleads no facts suggesting otherwise, the Court finds that the two-year clock started running no later than that point, rendering Plaintiff's claims, filed on August 17, 2020, untimely.[19] As such, Plaintiff's Complaint must be dismissed.

Accordingly, Defendant's motion to dismiss (Dkt. 10) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** this 19th day of May 2022.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[18] As did Ms. Kester. She brought her first lawsuit against Defendant on August 14, 2015, and then filed a second related case against Defendant on February 5, 2018.  Surely if Ms. Kester knew enough about her circumstances to file suit in 2015 against Defendant, she cannot now seriously argue that her claim didn't even accrue until years thereafter upon obtaining a formal diagnosis in 2019.

[19] Defendant correctly points out that the savings statute of does not make Plaintiff's case timely either. Under Title 12, § 100 of the Oklahoma Statutes, an otherwise untimely case could be timely if it is filed within one year of dismissing a timely filed previous case. Even ignoring the fact that Plaintiff's first case may have been untimely, the savings statute does not apply here because she filed this case 16 months after dismissing her second case.